## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD HORNSBY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:    23-3204 (RC) |
| | : | |
| v. | : | Re Document Nos.:    39, 43 |
| | : | |
| WILLIAM J. PULTE, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Richard Hornsby brought this action in May 2022 against the then-Acting

Director of the Federal Housing Finance Agency ("FHFA" or the "agency"), Sandra L.

Thompson,[1] for claims arising out of Hornsby's termination as Chief Operating Officer of the

FHFA and his appeal of that termination to the Merit Systems Protection Board ("MSPB"). In

his Complaint, Hornsby alleges that: (1) in terminating his employment, Defendant retaliated

against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e-3, and the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2302(b); (2) the

Administrative Judge ("AJ") and the full MSPB Board adjudicating Hornsby's appeal failed to

provide him with interim relief, in violation of 5 U.S.C. § 7701(b)(2)(A); and (3) the MSPB's

sustaining of the agency's decision to terminate Hornsby's employment was arbitrary,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Thompson has been substituted for
her successor.

capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with the law.  Compl. ¶¶ 44–48, No. 22-cv-1472, ECF No. 1.[2]  The Court previously dismissed Hornsby's retaliation claim, Mem. Op., No. 22-cv-1472, ECF No. 14, and denied his motion for reconsideration on that point, Mem. Op., ECF No. 34.  The parties have now cross-moved for summary judgment on Hornsby's remaining claims.  For the reasons stated below, the Court denies Hornsby's motion for summary judgment, and grants Defendant's cross-motion for summary judgment.

## II.  BACKGROUND

Because this is the Court's third opinion in this case, the Court assumes the parties' familiarity with the factual and procedural background, including as related in the Court's prior opinions.  *See Hornsby v. Thompson* ("*Hornsby I*"), No. 22-cv-1472, 2023 WL 196185, at *1–3 (D.D.C. Jan. 17, 2023); *Hornsby v. Thompson* ("*Hornsby III*"), No. 22-cv-1472, 2024 WL 3359505, at *2–3 (D.D.C. July 10, 2024).  The Court recounts here only the relevant background necessary to resolve these cross-motions for summary judgment.

Hornsby previously served as the Chief Operating Officer of FHFA.  *Hornsby III*, 2024 WL 3359505, at *2.  In April 2014, an FHFA employee falsely accused him of threatening to harm his supervisor, after which the agency placed Hornsby on administrative leave.  *Id.*  Hornsby was criminally charged but acquitted.  *Id.*  Following his acquittal, the FHFA did not reinstate Hornsby to his former position.  *Id.*  Instead, it terminated him for "conduct unbecoming a federal management official" based on 18 Specifications.  *Id.*; Compl. ¶¶ 23, 28.

---

[2] This case was originally docketed as civil case number 22-1472, and was later consolidated with civil case number 23-3204.  All citations to the docket are to case number 23-3204 unless otherwise indicated.

As relevant here, the agency's Notice of Proposal to Remove alleged the following

Specifications:

> 7.  On April 22, 2013, you had a meeting with Jessie Weiher, an FHFA Senior Economist, in response to an email he sent you seeking clarification about pay raises following remarks you made in an all hands meeting.  During your meeting with Mr. Weiher, you held up Mr. Weiher's email and said, "[L]ooking at this email . . . I found it fucking offensive."  Mr. Weiher said he had to leave because you had just cursed at him.  You apologized, and he stayed.  Later in the meeting you said, "[Y]ou know what you can do if you're unhappy with your pay.  You can just leave."  He asked if you were telling him that he had to find another job and you said no, and apologized again.  Mr. Weiher made notes about the encounter when he returned to his office, which he shared with Managing Associate General Counsel, Janice Kullman, after your criminal trial concluded.

> 8.  On a number of occasions, including the following, you made comments about specific employees in inappropriate settings and/or in the presence of other employees who should not have heard the comments: . . . During the course of a March 26, 2014, meeting with Janice Uthe, Manager, Contracting Operations, you made a comment to the effect that Senior Management Analyst, Shelly Blackston, who was not in Ms. Uthe's office, had a situation that was bringing outside people into the Agency after Ms. Blackston had filed an EEO complaint against the Agency . . . .

> . . . .

> 10.  At a meeting on National Mortgage Database matters, on February 20, 2014, in front of numerous staff, you placed your hand over the mouth of Robert Avery, the Project Director for the National Mortgage Database, to silence him from making further comments.  Several of the other employees in the room were surprised by your physical action.

> 11.  On or about late February or early March, 2014, you were talking to James Jordan and David Lee, lawyers in the Office of General Counsel, about a memo concerning the National Mortgage Database, because you disagreed with its contents.  You did not want the lawyers to include information about liability for data breaches.  Mr. Lee and Mr. Jordan had revised the memo several times, but you still had concerns about it.  You told them that issuing the memo might be a "career ender."  Mr. Jordan took your words as referring to the careers of Mr. Jordan and Mr. Lee.  The lawyers subsequently revised the memo to take out the information about liability for data breaches before sending it to you.

> . . . .

18. Sometime after you became aware of your "Fully Successful" rating, you asked Mr. Risinger, your subordinate, to negotiate with your supervisor, Mr. DeMarco, for a higher rating for you that would result in you receiving a bonus. Then in an email from you to Mr. Risinger dated April 24, 2014, you stated the following:

> Jeff: Please make sure Ed does not give me a partial bonus. I want the goose egg that reflects the unfair rating he gave me. If he suggests a 5 or 10 to further insult me I want it stopped before he leaves. I want it 0 to reflect what he told me to my face. If he does otherwise I will seek legal counsel.
>
> He continues not to resolve my jpp escalation! He has been nonresponsive. There is no excuse for his behaviour (sic).
>
> Rick.

AR 10–12 (bracketed alterations in original).[3]

Hornsby appealed his termination to the MSPB, and after a 5-day hearing, an AJ reversed Hornsby's termination in July 2016. *Hornsby III*, 2024 WL 3359505, at *2; Compl. ¶ 28. The AJ found that the agency had failed to prove by a preponderance of the evidence that the conduct alleged in Specifications 1–4 and 12–17 had occurred. AR 2954–57, 2959–61. For Specifications 5–11 and 18, the AJ found that "there is preponderant evidence that the specified conduct . . . occurred," but the conduct was not "unbecoming." *Id.* at 2961, 2963.

On Specification 7, the AJ found that Hornsby had cursed and then apologized when speaking to Weiher about his email "that caught [Hornsby] in a deviation from a promise regarding performance awards." *Id.* at 2962. But the AJ reasoned that "a single instance of uttering the word 'fuck' in this context, especially if one apologizes afterward, is not conduct unbecoming a federal manager." *Id.*

On Specification 8, the AJ found that although "criticizing one employee in front of others is not a management best practice, under the circumstances described in the record it is

---

[3] The Court refers to the administrative record, found in ECF No. 49, as "AR." The corresponding page numbers refer to the stamped Bates numbers.

also not conduct unbecoming a federal manager." *Id.*  The AJ did not discuss Hornsby's disclosure of the identity of the EEO complainant to another employee.

On Specification 10, the AJ concluded that Hornsby "placed his hand over Avery's mouth in a meeting in February 2014" and that it "made a big impression" on another meeting attendee, Jordan.  *Id.*  But the AJ found that "under these circumstances, the appellant's conduct was not unbecoming."  *Id.*

On Specification 11, the AJ found that Hornsby had told two agency attorneys, including Jordan, "that a memorandum they had drafted might be a 'career ender.'"  *Id.*  But ultimately, the AJ opined that regardless of whether Hornsby was referring to his own career or that of the attorneys, "telling a staff attorney that the contents of a memorandum could end a career is not conduct unbecoming a federal manager."  *Id.*

On Specification 18, the AJ found that Hornsby had sent the email regarding his bonus as alleged, but that "nothing about the contents of this" was unbecoming.  *Id.* at 2962–63.  The AJ specified that "Risinger testified that he volunteered to intervene on the appellant's behalf with DeMarco," *id.* at 2963 n.16, but earlier had stated that Hornsby "under took a campaign to change DeMarco's mind about the rating, as a part of which he entreated Risinger to intervene," *id.* at 2950.

Regardless, the AJ concluded that the agency had failed to meet its burden to prove conduct unbecoming a federal manager on any of the Specifications, and reversed Hornsby's removal.  *Id.* at 2963.  The AJ's decision did not address interim relief, as required under 5 C.F.R. § 1201.111(b)(4).

In August 2016, the FHFA petitioned the full MSPB Board ("Board") for review.  *See* AR 2977; *Hornsby III*, 2024 WL 3359505, at *2.  On September 9, 2016, Hornsby filed a

"Request for an Order of Interim Relief" with the AJ.  AR 3018.  Defendant responded, arguing

that the AJ lacked jurisdiction to modify its initial decision under 5 C.F.R. § 1201.112.

AR 3027–29.  The AJ apparently agreed, as it never responded to the request.  *See* Def.'s Cross-

Mot. Summ. J. ("Def.'s MSJ") at 10, ECF No. 43.  On September 21, 2016, Hornsby filed a

response in opposition to the agency's petition for review, but he did not file a cross-petition.

*See* AR 3034.  In his response, he argued that the AJ "made no erroneous findings of material

fact."  *Id.* at 3034, 3042.

"[B]ecause the MSPB did not have a quorum for over five years, the MSPB only issued a

final decision on the FHFA's petition in April 2022."  *Hornsby* I, 2023 WL 196185, at *2.  The

Board ultimately reversed the AJ's initial decision on the merits and ordered that Hornsby's

termination be sustained.  *Hornsby III*, 2024 WL 3359505, at *2; AR 3076–77.  The Board

reasoned that Hornsby was not entitled to interim relief for three reasons: (1) the Board's final

decision rendered his request for interim relief moot, (2) Hornsby essentially forfeited his right to

seek interim relief by failing to file a petition or cross-petition for review of the initial decision to

challenge the absence of an interim relief order, and (3) the Board would independently find that

Hornsby was not entitled to any relief, including interim relief, in this case.  AR 3081 & n.6.

On the merits, the Board reversed the AJ's determination that the FHFA had failed to

prove that Specifications 7–8, 10–11, and 18 supported a charge of conduct unbecoming a

federal manager.  *Id.* at 3083–91.  For Specification 7, regarding the cursing incident in response

to an email about a pay raise discrepancy, the Board reasoned that "[a]lthough an employee may

be allowed more leeway with disrespectful conduct in 'certain emotional, confrontational

contexts,' the conduct at issue in this specification occurred in a normal employment setting

where the appellant should have expected normal standards of conduct to apply."  *Id.* at 3084

(quoting *Hamilton v. Dep't of Veterans Affs.*, 115 M.S.P.R. 673, 678 (M.S.P.B. 2011)).  Further,
the Board noted that it can hold supervisors to higher standards of behavior than other
employees, so the Board concluded that the agency had proven Specification 7.  *Id.*

For Specification 8, the Board concluded that although some of the statements Hornsby
made to other employees were not improper, disclosing the identity of the EEO complainant was.
*See id.* at 3086–87.  The Board found that in March 2014, Hornsby had told the Manager of
Contracting Operations ("MCO") the identity of the complainant, who worked outside the
MCO's department, during a discussion about outsourcing work to avoid similar personnel
issues.  *Id.* at 3085–86.  The Board concluded that "[i]nforming the MCO that a specific
employee had filed an EEO complaint demonstrates poor judgment and is clearly unsuitable,
particularly given the appellant's position as COO."  *Id.* at 3087.  Accordingly, the Board found
that the FHFA had proven this portion of Specification 8.  *Id.*

For Specification 10, regarding when Hornsby covered Avery's mouth, the Board found
that even if "the Project Director was not offended by the appellant's actions . . . it was improper
and unsuitable for the appellant—who was the Project Director's immediate supervisor as well
as COO—to place his hands over the Project Director's mouth to prevent him from speaking
during a meeting."  *Id.* at 3088.  So, the Board determined that the FHFA had proven this
Specification as well.  *Id.*

For Specification 11, regarding the "career ender" memorandum, the Board found
believable the attorneys' allegations that Hornsby was intimidating them to remove risk analysis
associated with the National Mortgage Database from the memorandum, regardless of whose
career might be ended.  *Id.* at 3088–89.  Thus, the Board reasoned that this conduct was

unbecoming, particularly because it related "to information about potential agency liability." *Id.* at 3089.

For Specification 18, regarding Hornsby's performance rating, the Board found that the "record [did] not support the [AJ's] finding that the HR Director testified that he volunteered to negotiate with [DeMarco] for a better performance rating for the appellant." *Id.* at 3090. The Board noted that the "HR Director consistently stated that the appellant had asked him to negotiate with [DeMarco] to improve the appellant's performance rating," as well as the AJ decision's internal inconsistency on this point. *Id.* at 3090 & n.12. Accordingly, the Board concluded that "the record shows that the appellant asked the HR Director to intervene with [DeMarco] to improve his performance rating." *Id.* at 3090. Having clarified that factual determination, the Board had no trouble explaining why this conduct was improper: "the appellant was the HR Director's immediate supervisor. Thus, in making this request, the appellant was placing the HR Director in the untenable position of either refusing his supervisor's request or negotiating with his former second-level supervisor for a better performance rating for his supervisor." *Id.* at 3091. The Board also found Hornsby's email stating that DeMarco's "behavior was inexcusable" to be disparaging. *Id.* Accordingly, the Board concluded that the FHFA had proven Specification 18. *Id.*

In sum, the Board found "no basis for disturbing the [AJ's] findings that the agency failed to prove specifications 1–6, 9, and 12–17, and two parts of specification 8." *Id.* at 3097. In contrast, the Board found that "the agency proved specifications 7, 10, 11, and 18, and one part of specification 8," and that this was enough to prove "the charge of conduct unbecoming a Federal manager." *Id.* The Board concluded the misconduct had a nexus to efficiency of the service because it occurred at work. *Id.* at 3098. In determining whether the penalty was

reasonable, the Board found that "[u]nder the circumstances," Specifications 7, 8, and 10, "standing alone, do not warrant severe disciplinary action." *Id.* at 3100. But because Specification 11 "had wide implications for the agency, including the potential of financial repercussions and negative impact on the reputation of the agency," the Board found that it "was highly serious and, in combination with the other sustained specifications, provides support for significant disciplinary action." *Id.* at 3100–01. Lastly, the Board found that Specification 18 was "directly related to the appellant's duties as a supervisor and was committed for personal gain, as the appellant would have received a significant bonus if his performance rating had been higher." *Id.* at 3101. The Board found this Specification to be "the most serious of the sustained specifications, providing further support for significant disciplinary action." *Id.* In concluding, the Board reiterated that the sustained Specifications were "quite serious" and determined that the agency's penalty was "within the parameters of reasonableness" given the level of impropriety of Hornsby's conduct. *Id.* at 3102. The Board thus sustained Hornsby's removal. *Id.*

A month later, Hornsby brought this suit to challenge the MSPB's final decision. *Hornsby III*, 2024 WL 3359505, at *2; Compl. He alleged that, in terminating his employment, (1) Defendant retaliated against him in violation of Title VII and the CSRA; (2) the AJ and MSPB failed to provide him with statutorily required interim relief; and (3) the MSPB's affirmance of the FHFA's decision to terminate his employment was unlawful, arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with the law. Compl. ¶¶ 44–48.

Defendant filed a motion to dismiss or, in the alternative, for summary judgment. *Hornsby III*, 2024 WL 3359505, at *2. Defendant argued that the Court should dismiss

Plaintiff's retaliation claim because Hornsby had failed to administratively exhaust that claim, and that the Court should then dismiss Hornsby's remaining claims for lack of subject-matter jurisdiction. *Id.* The Court agreed that Hornsby had failed to administratively exhaust his retaliation claim, and granted the motion to dismiss it. *Hornsby I*, 2023 WL 196185, at *6–10. The Court then determined that it lacked subject-matter jurisdiction over his remaining claims, and transferred them to the Federal Circuit pursuant to 28 U.S.C. § 1631. *Id.* at *10–11.

At the Federal Circuit, however, Defendant determined that a jurisdictional position it had taken in this Court, and that Hornsby had failed to rebut, was incorrect. *Hornsby v. Fed. Hous. Fin. Agency* ("*Hornsby II*"), No. 2023-1518, 2023 WL 7039492, at *1 (Fed. Cir. Oct. 26, 2023). The panel agreed, explaining that this Court's "dismissal of [Plaintiff's] discriminatory retaliation claim did not divest [it] of jurisdiction over the remaining claims or otherwise convert this mixed case into one that [the Federal Circuit] ha[d] jurisdiction to review." *Id.* The judges, therefore, transferred the case back to this venue. *Id.* Plaintiff then filed a motion for reconsideration of the Court's order dismissing his retaliation claim, which this Court denied. *Hornsby III*, 2024 WL 3359505, at *4–6.

The parties have now cross-moved for summary judgment on Hornsby's two remaining claims. *See* Pl.'s Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 39; Def.'s MSJ. The motions are fully briefed and ready for this Court's consideration.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." But when reviewing a decision of the MSPB, the district court sits as an appellate tribunal and "reviews nondiscrimination claims on the administrative record." *Butler v.*

*West*, 164 F.3d 634, 639 n.10 (D.C. Cir. 1999).  The court "will set aside the MSPB's determinations only when 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'; 'obtained without procedures required by law, rule or regulation having been followed'; or 'unsupported by substantial evidence.'"  *Id.* (quoting 5 U.S.C. § 7703(c)(1)-(3)).  This review is deferential—"[t]he MSPB reviews federal employer disciplinary actions deferentially," and courts in turn "review the MSPB's assessment deferentially."  *See Fogg v. Ashcroft*, 254 F.3d 103, 112 (D.C. Cir. 2001).  "Under the substantial evidence standard, this court reverses the Board's decision only 'if it is not supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Fitzgerald v. Dep't of Homeland Sec.*, 837 F.3d 1346, 1353 (Fed. Cir. 2016) (quoting *Shapiro v. Soc. Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015)); *accord Marcato v. U.S. Agency for Int'l Dev.*, 11 F.4th 781, 786 (D.C. Cir. 2021).

Under the CSRA, an agency may remove a covered employee "only for such cause as will promote the efficiency of the service."  5 U.S.C. § 7513(a).  The "efficiency of the service" standard "has been translated into a three-part test in which the agency must prove by a preponderance of the evidence that (1) the charged conduct occurred; (2) there is a nexus between the conduct and the efficiency of the service; and (3) the penalty imposed is reasonable."  *Adair v. Solis*, 742 F. Supp. 2d 40, 67 (D.D.C. 2010), *aff'd*, 473 F. App'x 1 (D.C. Cir. 2012) (citing *Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1147 (Fed. Cir. 1997)); *see Marcato*, 11 F.4th at 783.

## IV.  ANALYSIS

The Court first reviews the Board's decision to sustain Hornsby's removal on the merits, and then whether he is entitled to payment of interim relief.  On the merits, the Court concludes

that substantial evidence supports the Board's decision, and that the penalty of removal was reasonable. As for interim relief, the Court agrees that the Board properly exercised its discretion to deny his request, including because Hornsby failed to follow MSPB procedures to seek that relief. Therefore, the Court concludes that Defendant is entitled to summary judgment.

### A. Substantial Evidence Review

Hornsby argues that the "Board erred by substituting its own assessments regarding credibility of witnesses and inferences based on the evidence for those of the AJ who presided over the proceedings," and roots this argument in the substantial evidence standard.[4] *See* Pl.'s MSJ at 3, 31; Pl.'s Reply and Opp'n ("Pl.'s Opp'n") at 3, ECF No. 46. But the AJ made explicit factual findings that the five Specifications at issue occurred. AR 2961. And Hornsby previously argued to the Board that the AJ "made no erroneous findings of material fact." *Id.* at 3042. Because the Board agreed with the vast majority of the AJ's factual determinations, the primary issue is not whether the Board improperly disregarded the AJ's findings, but whether the conduct both the AJ and Board agreed occurred was unbecoming—a determination this Court reviews deferentially. *See Fogg*, 254 F.3d at 112; Def.'s MSJ at 16.

Hornsby was charged with "conduct unbecoming a federal manager."[5] AR 136. Applying the substantial evidence standard of review, the Court's task is to determine if the

---

[4] Though Hornsby's Complaint initially listed every basis of review in 5 U.S.C. § 7703(c)(1)-(3), in both his motion for summary judgment and reply and opposition to Defendant's cross-motion for summary judgment, he only argues that the MSPB's decision was unsupported by substantial evidence. *See* Pl.'s MSJ; Pl.'s Opp'n. Because Hornsby did not address those other bases in either brief, the Court considers them forfeited. *See Anglers Conservation Network v. Pritzker*, 139 F. Supp. 3d 102, 116 n.10 (D.D.C. 2015) ("The Court need not address this because an argument not raised in an opening brief is forfeited.").

[5] The MSPB Board has adopted the ordinary meaning of "unbecoming": "unattractive; unsuitable . . .; detracting from one's . . . character, or reputation; creating an unfavorable impression." *Miles v. Dep't of Army*, 55 M.S.P.R. 633, 637 (M.S.P.B. 1992) (alterations in

Board's conclusion was "supported by such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion that Hornsby's conduct was unsuitable or created an unfavorable impression warranting removal.  *See Fitzgerald*, 837 F.3d at 1353 (quoting *Shapiro*, 800 F.3d at 1336).

### 1.  Specification 7

The parties do not dispute that Hornsby told an FHFA employee that his email seeking clarification about pay raises was "fucking offensive;" they dispute only whether that conduct was unbecoming.  *See* Pl.'s MSJ at 31–32; AR 10.  The Board reasoned that Hornsby should not be afforded leeway for his disrespectful conduct because "the conduct at issue in this specification occurred in a normal employment setting where the appellant should have expected normal standards of conduct to apply."  AR 3084.  And because the "agency can hold a supervisor to a higher standard of behavior than other employees," the Board concluded that this incident of cursing was unbecoming.  *See id.* (citing *Ray v. Dep't of Army*, 97 M.S.P.R. 101, 136 (M.S.P.B. 2004)).

Hornsby's arguments that the Board's conclusion was unreasonable are unconvincing. His motion cites one case, which does not stand for the proposition that profanity is not unbecoming.  *See* Pl.'s MSJ at 32 (citing *Black v. Guzman*, No. 22-cv-1873, 2023 WL 3055427, at *9–10 (D.D.C. Apr. 24, 2023)).  Rather, that case addressed whether the use of profanity constituted a materially adverse action sufficient to support a Title VII retaliation claim, a claim not at issue here.  *Black*, 2023 WL 3055427, at *9–10.  Hornsby also tries to highlight testimony suggesting that swearing had occurred at the FHFA without disciplinary action.  *See* Pl.'s MSJ

---

original) (quoting Webster's Encyclopedic Unabridged Dictionary of the English Language 1538 (1989 ed.)).

at 32.  But this is beside the point.  Given the deferential standard of review, the Court's job is not to decide anew whether Hornsby's cursing was unbecoming, but whether the Board could reasonably reach that conclusion.  As Hornsby admits, "he lost his temper and has agreed that the use of profanity in the workplace is inappropriate."  Pl.'s Opp'n at 5; *see also* AR 1084.  Thus, the Board's determination that Hornsby's conduct was unsuitable was reasonable, and the Court sees no reason to disturb that decision.  *See Holland v. Dep't of Def.*, 83 M.S.P.R. 317, 323–24 (M.S.P.B. 1999) (collecting cases sustaining removal based on disrespectful conduct).

### 2.  Specification 8

As Hornsby concedes, "the record reflects that in a conversation with a subordinate manager, Hornsby mentioned the name of a person who had filed an EEO complaint."  Pl.'s Opp'n at 7.  The question for the Court then is whether the Board's conclusion that this conduct was unbecoming is reasonable.  Albeit in a distinct setting, another court in this District has explained that "[b]ecause EEO charges often concern matters of a sensitive nature, an EEO complainant has a significant privacy interest in keeping confidential the fact that she is an EEO complainant."  *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 156 (D.D.C. 2010), *aff'd*, No. 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010).  The Board reasoned that revealing the complainant's name was unnecessary during Hornsby's conversation with the MCO, and that it demonstrated "poor judgment and is clearly unsuitable, particularly given the appellant's position as COO."  AR 3086–87.  This conclusion appears reasonable.

Hornsby fails to explain his reasons for the disclosure.  First, he argues that context justified his actions—namely, that he was acting as a "peace-maker" between the MCO and the Chief Information Officer.  Pl.'s MSJ at 33.  Hornsby does not argue that disclosure was necessary to make his point, so this argument appears to go to factors that might mitigate his

punishment, and not whether the conduct was itself unbecoming. Hornsby also suggests that the complainant's identity was widely known, *id.* at 34, despite the MCO testifying that she "did not know about [the complaint] until that moment," AR 2655. Hornsby appears to suggest that the agency had to show that the FHFA or the EEO complainant was harmed by Hornsby's disclosure. *See* Pl.'s MSJ at 34. But Hornsby cites no authority to support that harm from the disclosure is necessary to make the conduct unbecoming. Hornsby also raises concerns about the Board's assessment that he might have expressed "retaliatory intent" that "could clearly have a chilling effect in the agency." *See id.*; AR 3082–83. That discussion from the Board's decision concerned Specifications 5 and 6, which are no longer at issue. AR 3082. Lastly, Hornsby suggests, again without legal support, that it was the FHFA's burden to show that the EEO charges here were "of a sensitive nature." *See* Pl.'s Opp'n at 8. Though the sensitivity of the case may affect the severity of punishment, the Board acted reasonably in concluding that an unnecessary disclosure of an EEO complainant's identity was unbecoming. Thus, the Board's sustaining of this Specification was supported by substantial evidence.

### 3. Specification 10

For this Specification, Hornsby takes a different approach by arguing that "the testimony of the witnesses" before the AJ "did not support a determination that Hornsby had put his hand [over] Avery's mouth." Pl.'s MSJ at 35. This argument is one of Hornsby's most puzzling. The AJ concluded that Hornsby "placed his hand over Avery's mouth in a meeting in February 2014." AR 2962. Before the Board, Hornsby argued that the AJ "made no erroneous findings of material fact." *Id.* at 3042. Hornsby cannot now reverse course to argue that substantial evidence does not support the AJ's finding. *But see* Pl.'s Opp'n at 9. If that was not enough, substantial evidence clearly supports the AJ's finding, including the declaration of Jordan, a

meeting attendee, AR 145, and his testimony, *id.* at 2451. *See also id.* at 2962 (AJ noting that the situation "made a big impression on" Jordan). Moreover, Hornsby gloms onto the AJ's conclusion that the incident "probably was 'not a big deal'" to Avery. *See* Pl.'s Opp'n at 8 (quoting AR 2962). Regardless of whether the incident was a big deal to Avery, the Board's reasonable conclusion that the act of physically covering a subordinate's mouth during a meeting with others present was unbecoming was supported by substantial evidence.

### 4.  Specification 11

The Board found that Hornsby intimidated staff attorneys when he referred to their National Mortgage Database memorandum as a "career ender," and reasoned that this conduct was particularly unbecoming because it related "to information about potential agency liability." AR 3088–89. Hornsby appears to misunderstand the Board's rationale. He does not contest whether he said these words; instead, his leading argument challenges whether the attorneys' memorandum was substantively correct. *See* Pl.'s MSJ at 36. He then accuses the Board of speculating that his actions exposed the FHFA to financial risk without evidence. *See id.* But the Board's decision did not turn on who was right about the substance of the risk analysis in the memorandum. *See* AR 3088–89. Rather, the Board focused on whether intimidation was conducive to the "productive flow of ideas and communication" vital to the agency, particularly on the subject of agency liability. *Id.* at 3089. Hornsby does not meaningfully dispute the Board's finding on this point, and appears to argue that his statement was not intimidating because he was correct. *See* Pl.'s MSJ at 35; Pl.'s Opp'n at 9–10. That response is clearly incongruent to the Board's concern of intimidation. Thus, the Court cannot say that the Board's decision was unsupported by substantial evidence.

5.  Specification 18

Substantial evidence supports the Board's conclusion that it was unbecoming for Hornsby to ask his subordinate to negotiate with Hornsby's supervisor for a higher rating. *See* AR 3089–91.  Hornsby correctly identifies this Specification as an instance in which the Board reversed a factual finding of the AJ.  *See* Pl.'s MSJ at 36.  But even assuming the AJ made a credibility determination based on observations of witness demeanor, the parties agree that the Board could reverse that determination if it gave sound reasons for doing so.  *Compare* Def.'s MSJ at 16, *with* Pl.'s Opp'n at 3 (both citing *Long v. Soc. Sec. Admin.*, 635 F.3d 526, 530 (Fed. Cir. 2011)).  The reasons the Board provided for reversing the AJ's statement that "Risinger testified that he volunteered to intervene on the appellant's behalf with DeMarco" were sound. *See* AR 2963 n.16.

To begin, the Board based its reversal on an internal inconsistency in the AJ's opinion. *See id.* at 3090 & n.12.  The AJ specified that "Risinger testified that he volunteered to intervene on the appellant's behalf with DeMarco," *id.* at 2963 n.16, but earlier had concluded that Hornsby "under took a campaign to change DeMarco's mind about the rating, as a part of which he entreated Risinger to intervene," *id.* at 2950.  Both of those statements cannot be true, so the Board's decision to reconcile the AJ's contradictory statements was logical.

More importantly, the AJ's recounting of Risinger's testimony was contradicted by the record.  Risinger testified before the AJ that Hornsby "asked [him] to talk with Mr. DeMarco about [the rating] to try to get it reconsidered." *Id.* at 2041.  Risinger had previously testified in the criminal proceedings that "Hornsby asked his direct report to go to, to his boss to, to negotiate on his behalf," and that approaching DeMarco for that reason was "not an assignment [Risinger] would volunteer for." *Id.* at 364.  The Board cited this testimony, and other record

evidence, in explaining why it rejected the AJ's statement that Risinger volunteered to approach DeMarco. *See id.* at 3090. With that discrepancy addressed, the Board's conclusion that it was unsuitable for Hornsby to place his subordinate "in the untenable position of either refusing his supervisor's request or negotiating with his former second-level supervisor for a better performance rating for his supervisor," which would also entitle Hornsby to a larger bonus, was reasonable. *Id.* at 3091. And while Hornsby's email to Risinger about DeMarco may not have been independently sufficient to constitute unbecoming conduct, this additional context supports the Board's finding that Hornsby's email about DeMarco's "unfair" rating of Hornsby and his lack of responsiveness were at least derogatory, if not disparaging. *See id.* at 3089, 3091 (citing *Guise v. Dep't of Just.*, 330 F.3d 1376, 1380 (Fed. Cir. 2003)). Accordingly, substantial evidence supported the Board's determination that the agency had proven Specification 18.

### 6. Nexus and Reasonableness of Removal

As mentioned above, the agency had to prove (1) that the charged conduct occurred; (2) a nexus between the conduct and the efficiency of the service; and (3) that the penalty imposed is reasonable. *Adair*, 742 F. Supp. 2d at 67. Hornsby did not challenge the nexus element. *See* Def.'s MSJ at 31; Pl.'s Opp'n at 12–15. So the only issue is whether the penalty of removal was reasonable.

The MSPB has articulated 12 factors to consider when determining whether a penalty is "within tolerable limits of reasonableness."[6] *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305–

---

[6] "Those factors are: (1) 'The nature and seriousness of the [employee's] offense'; (2) 'the employee's job level and type of employment'; (3) 'the employee's past disciplinary record'; (4) 'the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability'; (5) 'the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties'; (6) 'consistency of the penalty with those imposed upon other employees for the same or similar offenses'; (7) 'consistency of

06 (M.S.P.B. 1981). A court reviews the MSPB's reasonableness determination under the same

deferential standards articulated in 5 U.S.C. § 7703(c). *Cf. Perry v. Raimondo*, 101 F.4th 55, 65

(D.C. Cir. 2024) ("The fact that some *Douglas* factors might weigh in Perry's favor does not

render arbitrary or capricious the Board's conclusion that the Bureau had reasonable grounds for

terminating his employment."). Hornsby fails to provide a persuasive reason why removal was

not a reasonable penalty. He appears to argue, without support, that removal had to be supported

by a single Specification, independently. *See* Pl.'s Opp'n at 13–15. That argument is contrary to

MSPB precedent. *See Soc. Sec. Admin. v. Manion*, 19 M.S.P.R. 298, 314 (M.S.P.B. 1984) ("The

remaining question is whether these proven specifications, *taken together*, constitute good cause

to impose a 30-day suspension on the respondent." (emphasis added)). In reviewing each

Specification individually, Hornsby argues that Specifications 7, 8, and 10 cannot support

removal because the Board concluded they did "not warrant severe disciplinary action." Pl.'s

Opp'n at 14 (quoting AR 3100). He then explains why Specification 11 was not as severe as the

Board concluded and that the Board's concerns over the financial implications of the

memorandum for the agency were unsupported by substantial evidence. *Id.* at 14–15. But then

Hornsby entirely fails to address Specification 18, which the Board found was "the most serious

of the sustained specifications" because it "directly related to the appellant's duties as a

supervisor and was committed for personal gain, as the appellant would have received a

---

the penalty with any applicable agency table of penalties'; (8) 'the notoriety of the offense or its
impact upon the reputation of the agency'; (9) 'the clarity with which the employee was on
notice of any rules that [were] violated in committing the offense, or had been warned about the
conduct in question'; (10) 'potential for the employee's rehabilitation'; (11) 'mitigating
circumstances surrounding the offense such as unusual job tensions, personality problems,
mental impairment, harassment, or bad faith, malice or provocation on the part of others
involved in the matter'; and (12) 'the adequacy and effectiveness of alternative sanctions to deter
such conduct in the future by the employee or others.'" *Perry v. Raimondo*, 101 F.4th 55, 64 n.3
(D.C. Cir. 2024) (alteration in original) (quoting *Douglas*, 5 M.S.P.R. at 305–06).

significant bonus if his performance rating had been higher." AR 3101. Even were the Court to agree with Hornsby's assessment of Specification 11, considering these sustained Specifications in aggregate, including Specification 18, which the Court agrees is the most severe because it was committed for personal gain, Hornsby's removal was within the bounds of reasonableness. Thus, the Court concludes that the Board's decision to sustain Hornsby's removal was reasonable and supported by substantial evidence.

### B. Interim Relief

For Hornsby's remaining claim, he argues that "FHFA was required by statute to pay interim relief to Hornsby during the time FHFA's petition for review was pending before the full Board of MSPB." Pl.'s MSJ at 2–3. But Hornsby failed to avail himself of any of the appropriate avenues to seek that relief, and even had he done so, the remedy for failure to provide interim relief was within the Board's discretion. Accordingly, the Board properly exercised its discretion to deny Hornsby interim relief.

Hornsby had multiple procedural options after the AJ failed to address interim relief in its initial decision. The AJ ordered "the agency to cancel the removal and to retroactively restore appellant . . . no later than 20 calendar days after the date this initial decision becomes final." AR 2964. The initial decision never became "final" because the agency filed a petition for review with the full Board. *See id.* at 2977; 5 C.F.R. § 1201.113(a) ("The initial decision will not become the Board's final decision if . . . any party files a petition for review . . . ."). But the statutory scheme allows for interim relief:

> If an employee or applicant for employment is the prevailing party in an appeal under this subsection, the employee or applicant shall be granted the relief provided in the decision effective upon the making of the decision, and remaining in effect pending the outcome of any petition for review under subsection (e), *unless*—

      (i)       the deciding official determines that the granting of such relief is not appropriate; or

      (ii)     [the relief provides for the employee's return to work, but the agency instead determines to pay the employee without returning him to work during the pending appeal.]

5 U.S.C. § 7701(b)(2)(A)–(B) (emphasis added). "[I]f the appellant is the prevailing party," the AJ's initial decision should contain a "statement . . . as to whether interim relief is provided effective upon the date of the decision, pending the outcome of any petition for review filed by another party." 5 C.F.R. § 1201.111(b)(4). "As part of the initial decision, an interim relief order is subject to challenge on petition for review." *Merino v. Dep't of Just.*, 94 M.S.P.R. 632, 634–35 (M.S.P.B. 2003) (citations omitted).

      In 2023, after the Board's decision in this case, the MSPB Board ruled that when an initial decision is silent as to interim relief, in violation of 5 C.F.R. § 1201.111(b)(4), the default rule is that the prevailing appellant is entitled to interim relief. *Stewart v. Dep't of Transp.*, No. DC-315H-18-0729-I-1, 2023 WL 3478428, at *3, ¶ 10 (M.S.P.B. May 16, 2023). That default rule is particularly significant because failure to certify compliance with an interim relief order, or to provide the interim relief, can result in dismissal of the agency's petition for review. *See* 5 C.F.R. § 1201.116. At the time of the Board's decision, the applicable regulation, which was amended on October 7, 2024, provided: "If the agency files a petition or cross petition for review and has not provided the required interim relief, the appellant may request dismissal of the agency's petition. Any such request must be filed with the Clerk of the Board within 25 days of the date of service of the agency's petition." 5 C.F.R. § 1201.116(d) (2022). Thus, "[a]n agency that fails to provide interim relief in such a case does so at its own peril and risks having its petition or cross petition for review dismissed." *Stewart*, 2023 WL 3478428, at *3, ¶ 11. But "the Board's authority to dismiss an agency petition" under the relevant regulation "is

discretionary, not mandatory." *Thome v. Dep't of Homeland Sec.*, 122 M.S.P.R. 315, 322 (M.S.P.B. 2015).

Taken together, the statutory and regulatory scheme provides for interim relief when an AJ's initial decision is silent on the issue. But Hornsby failed to take any appropriate procedural step to avail himself of that relief. And even had he taken the appropriate steps, the availability of that relief was still within the Board's discretion.

The FHFA identifies two procedural avenues that were available to Hornsby, and the Court adds another. First, Hornsby could have filed a cross-petition for review of the AJ's decision, as the Board noted in its decision. *See* AR 3081 n.6 (citing *Thompson v. Dep't of Air Force*, 104 M.S.P.R. 529, 532 (M.S.P.B. 2007)); Def.'s MSJ at 32–33. Hornsby failed to do so.

Second, Hornsby could have filed an enforcement petition with the regional office after the Board adjudicated the agency's petition under the then-operative regulations. *See* 5 C.F.R. § 1201.116(g) (2022) ("If the initial decision granted the appellant interim relief, but the appellant is not the prevailing party in the final Board order disposing of a petition for review, and the appellant believes that the agency has not provided full interim relief, the appellant may file an enforcement petition with the regional office under 1201.182 of this part."); Def.'s MSJ at 33. But he did not do this either.

Lastly, Hornsby could have anticipated *Stewart*'s holding, argued that he was entitled to interim relief before the Board, and moved to dismiss the agency's petition under the then-operative regulations. *See* 5 C.F.R. § 1201.116(d) (2022) ("If the agency files a petition or cross petition for review and has not provided the required interim relief, the appellant may request dismissal of the agency's petition."). Hornsby failed to do this as well.

Instead, Hornsby filed a "Request for an Order of Interim Relief" with the AJ, who no longer had jurisdiction to order interim relief in his case. *See* AR 3018, 3027; 5 C.F.R. § 1201.112(a) (listing the limited circumstances under which an AJ retains jurisdiction over a case after issuing the initial decision). Hornsby now argues that he "did file a request for interim relief both with the [AJ], but the Board refused to provide for interim relief." Pl.'s Opp'n at 15 (citation omitted). The word "both" appears to be errant—Hornsby filed that request with the AJ, but *not* with the Board. In fact, in his opposition to the agency's petition for review filed with the Board, Hornsby did not even mention interim relief. *See* AR 3034–54. Even had he raised the issue before the Board, it made clear that it would not have granted him that relief, which was within the Board's discretion. *See id.* at 3081 n.6; *Thome*, 122 M.S.P.R. at 322.

Before this Court, Hornsby argues that 5 U.S.C. § 7701 "does not require or even expect the prevailing employee to file an independent motion or petition to receive the initial decision's ordered relief or the interim relief." Pl.'s MSJ at 28. Even accepting that as true, Hornsby fails to connect the remedy to the wrong. *Stewart*, on which Hornsby relies, specifies the "peril" the agency may face for failure to provide interim relief: "having its petition or cross petition for review dismissed." *Stewart*, 2023 WL 3478428, at *3. This makes sense: interim relief is "the relief provided in the [AJ's] decision." 5 U.S.C. § 7701(b)(2)(A). So, the Board's dismissal of a petition would make the AJ's initial determination final, entitling the prevailing appellant to that relief, albeit on an ongoing basis. Hornsby provides no legal basis for requiring the Board to dismiss a petition, let alone to do so *sua sponte*.

Hornsby's remaining arguments all lack merit. The Court agrees that "[h]ow long it takes for the agency's appeal to be decided is not the fault of the prevailing employee." Pl.'s MSJ at 30. But Hornsby failed to take the steps he could have to shift the cost of delay to the

agency.  And though Hornsby argues that § 7701(b)(2)(A) "provides for interim [relief] because the agency has decided to provide the appellant with 'the relief provided in the decision effective upon the making of the decision,'" he fails to acknowledge that that statute gives the "deciding official"—the AJ—the discretion to determine whether that relief is "appropriate."  *See* Pl.'s Opp'n at 16, 19; 5 U.S.C. § 7701(b)(2)(A).  A successful appellant is thus not entitled to interim relief by virtue of the statute as a matter of course.

Lastly, Hornsby's attempt to distinguish *Jones* only highlights his misunderstanding of the available remedies for failure to provide interim relief.  He argues that "the issue in *Jones* did not address an appellant's *entitlement to interim relief*.  Rather, the issue in Jones was *whether '[t]he agency's failure to provide interim relief . . . warranted dismissal of its petition for review.'*"  Pl.'s Opp'n at 19 (alterations and italicization in original).  The reason dismissal was at issue was because that is the remedy available for an agency's failure to provide interim relief. *See* 5 C.F.R. § 1201.116(e) (2022); 5 C.F.R. § 1201.116(c) (2024).  In sum, regardless of Hornsby's entitlement to interim relief, he failed to pursue any of the available avenues to remedy the agency's failure to provide that relief.  The Board did not err by denying relief on that basis.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 39) is **DENIED**; and Defendant's Cross-Motion for Summary Judgment (ECF No. 43) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 17, 2025                              RUDOLPH CONTRERAS
                                                                    United States District Judge